## 9542

### MASSEY *ET AL.* v. GLENN *ET AL.*

#### (90 S. E. 321.)

1. Counties — Establishment — Constitutional and Statutory Provisions—"May"—"Shall."—Constitution, art. III, sec. 1, vests the legislative power of the State in two distinct branches, together styled the "General Assembly of the State of South Carolina." Constitution, art. VII, sec. 1, provides that the General Assembly "may" establish new counties on petition of one-third of the qualified electors within the proposed new county to the Governor, setting forth the boundaries, etc., who shall order an election, and that at such election the question of the name and the county seat "shall" be submitted to the electors, and section 2 provides that, if two-thirds of the qualified electors vote to create such new county, the General Assembly "shall" establish it. Act Feb., 1912 (27 St. at Large, p. 841), provides that the General Assembly shall not establish any new county the greatest length of which shall be more than four times as long as the least central width thereof, or which will leave the counties from which the territory is taken more than four times as long as the least central width thereof, and that the Governor shall

not order an election in such described area. *Held,* that the provisions of the Constitution were directory and not mandatory, and that the statute was constitutional, so that the commissioners to investigate the compliance with the requirements for a new county the territory of which did not conform to the requirements of the statute would be enjoined from proceeding with the investigation.

2. CONSTITUTIONAL LAW—LEGISLATIVE POWERS—CONSTRUCTION OF PROVISION.—Constitution, art. III, sec. 1, providing that the legislative power of the State shall be vested in two distinct branches, both together styled the "General Assembly of the State of South Carolina," confers the whole legislative power of the State in the making of laws and providing for their enforcement, not plenary, however, but subject to constitutional limitations.

3. CONSTITUTIONAL LAW—CONFLICTING PROVISIONS—CONSTRUCTION.—The word "shall," in Constitution, art. VII, sec. 2, providing that, if two-thirds of the qualified electors shall vote for the establishment of a proposed new county, the General Assembly at the next session shall establish such county, being in conflict with the word "may," in the first section thereof, providing that the General Assembly may establish new counties, and in conflict with the construction based on the word "shall," in that part of section 1 providing that at the same election the question of the county seat shall be submitted to the electors, the rule applies that, when two sections of a Constitution are inconsistent, effect will ordinarily be given to that which is in harmony with other provisions, rather than to that which is inconsistent with more than one provision.

4. CONSTITUTIONAL LAW—CONSTITUTIONALITY OF STATUTES—CONSTRUCTION.—The acts of the legislature are to be presumed to conform to the restrictions of the Constitution, unless the contrary is manifest, and the validity of a law is not to be questioned unless obviously so repugnant to the Constitution that when pointed out by the judiciary all men of sense and reflection in the community may perceive the repugnancy.

Before MOORE, J., Lancaster, May, 1916. Affirmed.

Application by Septimus Massey and others for an injunction against J. L. Glenn and others, commissioners. Questions referred to Judge of the Sixth Circuit, who rendered the following decree:

This was an application to the Supreme Court, in its original jurisdiction, seeking to restrain and perpetually enjoin the respondents from further proceeding, as commis-

sioners appointed by the Governor of this State, pursuant to the provisions of section 636 of the Civil Code of 1912, to make the investigation directed by sections 638 and 639 of such Code, the respondents having been duly appointed for that purpose and as preliminary to the possible ordering of an election upon the question of establishing the proposed new county of Catawba. Upon the hearing of the return made by the respondents to the rule to show cause, issued upon this petition, although this return admitted all the facts alleged and took issue with the petitioners only upon a proposition of law, the Supreme Court passed an order that "this cause be forthwith referred to the resident Circuit Judge of the Sixth Judicial Circuit, for the purpose of a hearing of the cause there, with the request that the Circuit Judge will hear and dispose of this matter so that the cause may be heard by this Court when the special docket of this Court is reached and called."

This order having been made by the Supreme Court on May 18, 1916, the resident Circuit Judge of the Sixth Judicial Circuit proceeded to a hearing herein which was duly had on the 26th instant, on which date the legal question here presented was fully argued. As the calling of the special docket in the Supreme Court is reported as fixed for the 6th proximo, little time is available for investigation and consideration of the important question which is here involved, and the issue must necessarily be decided with the aid only of such light thereon as has been furnished by the able and exhaustive arguments of the learned counsel engaged in the cause.

It is admitted that the shape of the proposed new county of Catawba does not conform to the requirements of the act of the General Assembly of this State, entitled an "Act to Prevent the Formation of Ill-Shaped Counties" (27 Stats. 841), in that the length of such proposed county is more than four times the least central width thereof, excluding any width within eight miles of the ends thereof. It is

further conceded by respondents that the prayer of the petitioners must be granted, provided the conclusion shall be reached that there was legislative power to pass the act just mentioned; but it is contended in this behalf that such act is unconstitutional, null and void, in that it contravenes the provisions of article VII of the State Constitution, and especially sections 1 and 2 of that article. The sole question, therefore, here to be determined is as to whether or not the requirements of the act of 1912 are violative of the constitutional provisions to which reference has just been made. The haste enjoined by the request from the Supreme Court, to the effect that the judgment of the Circuit Court herein shall be forthwith rendered, precludes the possibility of any elaborate discussion of the important question presented, and leaves time for little more than a mere statement of the conclusion reached.

The contention of the respondents is that, although no reference is made in the constitutional provisions to the matter of *shape* of any proposed new county, nevertheless, since the Constitution directs, in section 1 of article VII, that an election shall be ordered upon the question of establishing a new county, upon the presentation of a petition as therein prescribed, "setting forth the boundaries and showing compliance with the requirements of this article," such provision involves an implied inhibition against the legislative addition of any further requirements in order to the establishment of a new county. In other words, the respondents maintain the proposition that, as the Constitution contains no provision as to the "shape" of a proposed new county, but does contain restrictions as to area, population and taxable property therein, and regulation as to petition by a fixed proposition of certain qualified electors for the creation thereof, as prerequisites to an election upon the question of the formation of such new county, the legislature has no power to enact additional requirements as to the "shape" of such proposed county.

There can be no doubt that prior to the Constitution of 1868, the legislature had full power and control over the matter of the formation of new counties, and that the only restriction upon that power imposed by the Constitution of 1868 consisted in the limitation that no county of the State should contain less than 625 square miles of area. See *Segars* v. *Parrott,* 54 S. C. 23, 31 S. E. 677, 685. Hence, it follows that such power and control by the legislature still exists, except in so far as it has been curtailed by the provisions of the Constitution of 1895, which, to use the language of Chief Justice McIver in the 'case just cited, "Places still further limitations upon the power of the General Assembly to establish new counties." See also *State* v. *Parlor,* 52 S. C. 217, 29 S. E. 651.

It must, therefore, now be determined whether there is contained in the present Constitution any limitation upon the previously existing powers of the legislature to prescribe the shape of new counties to be formed in pursuance of the provisions contained in that embodiment of the fundamental law of the commonwealth.

In considering this question, it is to be remembered that every presumption must be indulged in favor of the constitutionality of the legislative enactment here involved, and that it cannot be held unconstitutional unless it shall be found to be in manifest conflict with the requirements or provisions of the fundamental law as declared in the Constitution. See *Pelzer* v. *Campbell,* 15 S. C. 581; *Grocery Co.* v. *Burnett,* 61 S. C. 214, 39 S. E. 381; *State* v. *Hammond,* 66 S. C. 227, 44 S. E. 797; *Greenville* v. *Foster,* 101 S. C. 318, 85 S. E. 769; *Commissioners* v. *Buckley,* 82 S. C. 357, 64 S. E. 163; *Thomas* v. *Railway,* 100 S. C. 480, 85 S. E. 50. At the same time, it is also to be noted that, while it is incumbent upon those who question the validity of a statute to point out the particular constitutional provision thereby violated, it is not necessary that this should be made to appear by an express prohibition against such

legislation, but that it is sufficient that it infringes some positive direction of that instrument or that it would frustrate or defeat the purpose of a particular constitutional provision. Cooley on Constitutional Limitations (7th ed.), p. 127.

The legislative enactment now under consideration contains the provisions that no county shall hereafter be established "the greatest length of which shall be more than four times as long as the least central width thereof," and directs that the Governor shall not order an election in any proposed new county not complying with such requirement. As already stated, the respondents contend that this act is unconstitutional as being forbidden by the true intent of the provisions contained in article VII of the Constitution and particularly of sections 1 and 2 of that article.

In the case of the *State* v. *Parlor,* already cited, it was held by the Supreme Court of this State that the only restrictions upon the power of the legislature in the establishment of new counties are those contained in the several sections of article VII of the Constitution, and that these restrictions "do not negative the idea" that the General Assembly may provide other requirements for the creation of such governmental agencies, in so far as such requirements are not in conflict with the provisions of that instrument. See *State* v. *Parlor,* 52 S. C., at page 217, 31 S. E. 677, 685. In what particular, then, is it here suggested that the legislative enactment of 1912 contravenes the constitutional provisions embodied in the various sections of this article? While it is not clearly stated by respondents in the argument submitted in their behalf, their contention seems to be that the act in question is contrary to the spirit and intent of the provisions contained in the first five sections of this seventh article, relating to the petition and vote by the people, and to the area, population and taxable property of the territory proposed to be erected into a new county.

These sections contain provisions to the general purport and effect that no new county shall be formed except upon petition of one-third of the qualified electors within the area of each section of an old county proposed to be cut off to form such new county, nor unless upon consent thereto of two-thirds of such electors voting at an election for that purpose, nor unless such new county shall contain at least a certain area, population and amount of taxable property; but they contain no direct reference whatsoever to the matter of the shape or figure of the county so projected. Hence, under the authorities already cited, since the Constitution contains no express utterance with regard to the shape of a new county, the general provisions thereof, as to petition, election, area, population and taxable property, can have no force by way of restriction upon the plenary powers otherwise possessed by the General Assembly in the matter of determining the shape of new counties to be formed thereunder, and it only remains to determine whether any such restriction upon the legislative power to determine such shape must necessarily be implied from any language used in that instrument.

The only clause which could possibly be held to have any reference whatever to the matter of the shape of new counties to be formed under this Constitution is to be found in section 1 of article VII thereof, which declares that "whenever one-third of the qualified electors within the area of an old county proposed to be cut off to form a new county shall petition the Governor for the creation of a new county, setting forth the boundaries and showing compliance with the requirements of this article, the Governor shall order an election within a reasonable time thereafter." By a resort to inference from the general phrasing here employed, it may, with some subtlety, be argued that the provision here found that the electors shall set forth in the petition "the boundaries" of the proposed new county involves an implication that they are likewise to determine the "shape" of

such county. But the inference is not one which necessarily follows from the phraseology employed, and there are cogent considerations which negative such an intent on the part of the framers of this instrument. While it is manifest that the Constitution has, by this provision, given the electors signing such petition the right to define the boundaries of the area which they propose to erect into a new county, it by no means follows that it thereby intended to take away from the legislature the power to require that the shape of the new county proposed should bear some reasonable relation to the purpose for which such counties are established, and that the same should not be of such form as to be prejudicial to the interests of other citizens of the State having no voice in the election upon the question of its creation.

In construing the Constitution, it is to be remembered that the object of such an instrument is to lay down the general rules for the control of the legislative, executive and judicial departments of the government thereby established. Ordinarily such an instrument does not undertake to declare the details of the particular manner in which such general rules are to be carried into effect.

Viewing the provisions of article VII of this Constitution in the light of these general considerations, it is evident that no intention appears to provide in legislative detail for the formation of new counties, but that it voices merely an intent to prescribe general rules for the government of the legislative body in the matter of the creation of these governmental agencies of the State. The provisions of this article are not self-executing, but manifestly and in terms require legislative action to carry them into effect. The very first section thereof, which introduces the matter of the formation of new counties, is by its express terms merely a permission to form new counties, followed by restrictions in subsequent sections upon the legislative power to provide for the establishment thereof. In this first section of the

article under consideration, the Constitution does not declare that the legislature *shall* establish new counties, but it provides that the General Assembly *"may"* create additional political divisions of that description. In the absence of any controlling consideration to the contrary arising from the context or from the language used in other parts of the instrument itself, the word "may" must be given its usual ordinary and obvious meaning, which is to say, it must be construed as merely giving permission to the legislature to provide for the establishment of new counties, subject to the conditions and restrictions thereinafter imposed. See *Cook* v. *Bank,* 52 N. Y. 96, 11 Am. Reps. 667; *May* v. *Stoner,* 15 Wyo. 109, 87 Pac. 434, 89 Pac. 466; *Scott* v. *McCreary,* 148 Ky. 791, 147 S. W. 903; *State* v. *Shockley,* 29 Utah 25, 80 Pac. 865, 110 Am. St. Reps. 637.

This particular section must, therefore, be construed not as undertaking to vest a right in the people of any special locality to erect themselves into a county by pursuing a prescribed course and complying with certain fixed conditions, but as merely ratifying the previously existing power of the General Assembly of this State to create new counties thereafter, subject, however, to the qualification that such powers shall not be exercised without first obtaining a petition for the formation of such new county from at least "one-third of the qualified electors within the area of each section of any old county proposed to be cut off to form a new county." In defining the nature of the petition to be thus presented, it is incidentally provided by this section that it shall set forth "the boundaries" of the new county proposed and show compliance with the requirements of the other sections of this article as to area, taxable property and number of inhabitants. It would involve a most grievously strained and forced construction of this section to hold that a merely incidental and explanatory reference to the "boundaries" to be set forth in the petition required must include a denial of the legislative right to enact a further

requirement that a proposed new county shall be of such shape as would reasonably fit it for the effectuation of the objects contemplated in its creation as a governmental agency of the State.    Such subtle, forced, unnatural and strained interpretation is forbidden by the general rules of construction of such instruments.    See Potter's Dwarris on Stats. and Const., p. 188, *passim.*    See also Cooley's Const. Lim. (5th ed.), p. 71.    As there said by Judge Cooley in discussing the.interpretation of State constitutions: "This is but saying that no forced or unnatural construction is to be put upon their language, and it seems so obvious a truism that one expects to see it universally accepted without question; but the attempt is made so often by interested subtlety and ingenious refinement to induce the Courts to force a meaning which their framers never held, that it frequently becomes necessary to redeclare this fundamental maxim. Narrow and technical reasoning is misplaced when it is brought to bear upon an instrument framed by the people themselves, for themselves, and designed as a chart upon which every man learned and unlearned may be able to trace the leading principles of government."

Rejecting, therefore, the forced construction suggested by respondents, it must be held that the constitutional requirement of a petition setting forth the boundaries of the proposed county does not import a negative of the legislative right to require that the county proposed shall not be of such ill shape as not to be properly adapted to the governmental purposes which are to be given the first consideration as inducements to its creation.

The further provisions contained in this and subsequent sections of this article, relating, as they do, to the area, taxable property and other like essentials, with reference to the cutting down of old counties and the formation of new ones, are merely additional restrictions upon the legislative power to provide for the establishment of such new counties, and do not militate against the conclusion already announced

that the Constitution does not confer upon the people of any part of the State any self-executing right to establish a new county. So far as concerns the argument sought to be drawn from the imperative phrasing used in section 2 of article VII, to the effect that if the election upon the question of the establishment of a new county be carried by a two-thirds vote, "the General Assembly at the next session shall establish such new county." It is sufficient here to say that however mandatory such requirement may be, it has already been decided by the Supreme Court that the General Assembly has the right, under its possession of general legislative powers, to enact other requirements for the formation of counties in addition to and not inconsistent with the restrictions contained in that instrument. See *State* v. *Parler,* 52 S. C. 217, 31 S. E. 677, 685. Hence a holding that the mandatory wording of the section just cited must be given the effect here contended would involve a reversal of the conclusions reached in the case last mentioned. Furthermore, upon the considerations already mentioned and entirely independent of the decision in *State* v. *Parler,* the requirement that the new county "shall" be established if the election result in favor thereof, must be held to have had reference to an election had in pursuance of the valid requirements of the act of the legislature making provision therefor, and, therefore, when the phrasing just quoted is considered as being used in the view of a valid legislative act thereafter to be passed, for the purpose of making such provision for the elections, the use of such terms with reference to the effect of such election raises no implication against the legislative power to make provision against the formation of ill-shaped counties.

The provisions and requirements of the various sections of article VII, therefore, so far as they are applicable, being merely limitations upon the previously existing right of the legislature to provide for the establishment of new counties, cannot be held to render unconstitutional a legis-

lative enactment against the formation of ill-shaped counties, and this enactment is not inconsistent with any such provisions or requirements of this article, and, therefore, does not come within the true intent and meaning of the restrictions thereby provided.

This conclusion is fortified by the consideration that any other holding would lead to the absurd result that the Constitution intended to confer upon the people of comparatively small sections of the State the power at any time to erect themselves into a county by a certain method of procedure without any consideration or protection whatsoever for the rights and interests of the people in other territory of the State who might be injuriously affected by the formation of new counties of such ill shape and proportions as would be prejudicial to· the welfare of the State in general. For instance, if it should be held that the Constitution forbids the enactment of statutes of the character of that here in question, it must follow that it also forbids a legislative enactment against the formation of new counties not composed of contiguous territory, although it contains no hint of any such purpose in the verbiage employed. The very identical course of reasoning here presented for adoption on behalf of the proponents of the new county of Catawba could be urged, with equal force, against the constitutionality of .a legislative direction that a proposed new county must be composed of contiguous territory. If the contention now made by respondents should prevail, it would be entirely possible to effectuate the creation of a county composed of disjointed, fragmentary and widely separated portions of the territory of the State, and to accomplish such a result to the great detriment of the interests and welfare of the people as a whole, at the whim and caprice of those only who might be voters within the limits of the *disjecta membra* thus sought to be artificially united without any opportunity for any voice therein on the part of others affected, and in opposition to the will of the whole people

of the State as voiced in legislative enactment. A construction leading to so absurd a conclusion furnishes in itself a most potent and unanswerable argument against its adoption, and imperatively demands the holding that the act here in controversy is not inhibited by any implication arising from the language used in the Constitution, since no reasonable construction can be found in support of any such implication.

The further argument is advanced by respondents, however, that a conclusion in favor of their position should be drawn from the fact that in the journal of the proceedings of the constitutional convention it appears that certain proposals to incorporate into the Constitution then being framed, various provisions with reference to the shape of new counties were rejected, or at least not adopted by that body. But in the light of the conclusions already reached, it is evident that the rejection or the failure to adopt any such provision is entirely consistent with a purpose on the part of the convention not to hamper or restrain the legislative power in this regard; and hence such action or nonaction of the convention can furnish no basis for the inference thus sought to be drawn. Such proposals could be viewed only as indicating the purpose of further limiting the previously existing legislative power, and their failure or rejection cannot be held as accomplishing a purpose which would only be achieved by the adoption of such a limitation. Hence, the nonaction of the constitutional convention, or its refusal to adopt provisions of this character, cannot be regarded as having the effect of importing into the Constitution any inhibition against the legislative act of 1912.

It is quite true, as urged by respondents, that this act is not binding upon subsequent legislative bodies, and may be set aside by some future General Assembly, since no law passed by one legislature can control its successor to the extent of preventing the adoption of an inconsistent enact-

ment.　Having been duly approved by the Governor, however, the act is in force and effective as the law of the State until duly repealed; and so long as it is operative it must be enforced.　There being no constitutional provision rendering it void, it must be declared enforceable, even though this Court may be in sympathy with the desire of the proponents of the new county of Catawba for the establishment of a governmental division of the. State of the proportions here contemplated, and might otherwise be ready to favor its creation in disregard of the fact that its length is so manifestly and spectacularly disproportioned to its narrowest central width.

As the act of 1912 (27 Stat. 81) provides that no election shall be ordered in any area proposed to be erected into a new county where such territory sought to be formed into a new county is of such an ill shape as is proscribed therein, and as, it is admitted that the proposed new county of Catawba would constitute an ill-shaped county within the meaning of the term as defined by this act, and that its ·establishment could be effectuated only by disregarding the provisions of that statute, and since it is conceded that the respondents are the members of a commission proceeding to incur an expense preliminary to the possible ordering of such an election, and which expense might become a burden upon the petitioners as taxpayers within the limits of the proposed new county, the conclusions already announced require that the temporary order of injunction heretofore granted herein be made perpetual and it is accordingly so adjudged.

*Mr. R. H. Welch,* for appellants, cites: *As to the constitutional requirements for new counties:* 54 S. C. 23; 65 S. C. 86.　*Limitation on legislative power:* 15 S. C. 581; 21 S. C. 379; Cooley Const. Lim. (7th ed.) 99, 105 to 106, 161 172, 127; 73 S. C. 412; 6 A & E. Enc. of L. (2d ed.) 1010; Journal Const. Con. 1895, pp. 44, 173, 183, 245, 255,

384. *Distinguishes:* 52 S. C. 217; 34 Neb. 172; 51 N. W. 648; 15 S. C. 581; 16 S. C. 32. *"Shall" mandatory:* 20 A. & E. Enc. L. (2d ed.) 239; 10 S. C. 343; 26 Cyc. 1591 to 1593. *Contiguous territory of counties:* 69 Minn. 202; 71 N. W. 733.

*Messrs. Marion & Marion,* for respondents, submit: *Except as limited by the Constitution, in the creation, establishment and control of counties the legislative power of the State is supreme:* 13 B. Mon. 22; 7 R. C. L. 923; 47 Am. Rep. 534; Cooley, Const. Lim. (6th ed.) 104; Sutherland, Statutory Construction, sec. 8; 54 S. C. 23; 52 S. C. 217. *Every presumption must be indulged in favor of the constitutionality of an act of the legislature and that to justify a Court in pronouncing a legislative act unconstitutional, the case must be so clear as to be free from doubt, and the conflict of the statute with the Constitution must be irreconcilable. To doubt the constitutionality of the law is to resolve the doubt in favor of its validity:* 6 R. C. L., sec. 73, 98, 42, 47; 15 S. C. 581; 61 S. C. 214; 66 S. C. 227; 101 S. C. 318; 82 S. C. 357; 100 S. C. 480; 8 Cyc. 732; 110 Am. St. Rep. 639; 16 S. C. 52. *Constitutional directions are not mandatory:* 43 L. R. A. 287; 147 S. W. 903, 904; 147 Ky. 791; 110 Am. St. Rep. 639; 5 L. R. A. 340. *This provision of article VII is not self-executing, for the reason that it is from its very nature addressed to the General Assembly and depends at last for execution upon legislative power, which may or may not be exercised:* 6 R. C. L., sec. 54; 31 Am. St. Rep. 629; 56 L. R. A. 120; 50 L. R. A. 208 *(Note* VII). *And cite as to limitations on legislative power:* 15 S. C. 592; 4 S. C. 403; 38 S. C. 406; 16 S. C. 32; 24 S. C. 60; 41 S. C. 261 to 267; 42 S. C. 230 to 246 and 298; 34 Neb. 162; 51 N. W. 648; 18 S. E. 770; 8 Colo. 420; 8 Pac. 661; 65 S. C. 86. *As to the police power:* 8 Cyc. 863; 77 Am. St. Rep. 681; 46 L. R. A. 442; 41 S. C. 220; 42 S. C. 222; 6 R. C. L., sec. 204; 90 N. C. 437; 47 Am. Rep. 535; 4 Strob.

306; 2 Strob. 508; 1 McM. 323; 1 Rich. 385; 33 S. C. 56; 42 S. C. 222; 48 S. C. 21; 92 S. C. 116.

*Messrs. McDonald & McDonald,* also for respondents, cite: *As to the origin, nature and purpose of counties, and the position they occupy under our form of government:* 7 R. C. L. 923, 925, 928; 20 Am. St. Rep. 676; 52 Miss. 523; 12 Kan. 426; 95 N. C. 189; 37 Ark. 339; 19 N. Y. 41; 6 Cush. 578. *As to the legislative power in establishing counties:* Cooley on Con. Lim. (5th ed.), pages 103-106, 201-7, 229-232, 282-295, 303-305; 92 U. S. 307; 23 L. 552. And submit: *Unless the Constitution itself expressly or by necessary implication forbids the legislature to act with reference to any subject, it has the power and it is perfectly competent to enact any legislation which, in its sound wisdom, as the custodian of the general legislative power of the State, it deems best for the interest of the people of the whole State:* 4 S. C. 420; 6 S. C. 1; 15 S. C. 592; 16 S. C. 34; 21 S. C. 375; 38 S. C. 399; 41 S. C. 234; 42 S. C. 231; 42 S. C. 293; 48 S. C. 152; 52 S. C. 217; 101 S. C. 317.

*Mr. W. W. Lewis,* also for respondents, cite: 54 S. C. 23, 24; Cooley Const. Lim. 87-172; 5 S. C. 420, 421; 42 S. C. 231; 15 S. C. 593; 19 Wall. 673; 42 S. C. 298; 52 S. C. 217; 6 S. C. 1; 16 S. C. 32; 21 S. C. 375.

*Messrs. Gaston & Hamilton,* also for respondents, cite: *As to formation of counties:* Const. 1895, art. V, 13; VII, 11 and 13; XI, 5; 4 Stats. 561, 661; 37 U. S. Stats. 14; 52 S. C. 207; 54 S. C. 23. *Function of Courts:* 6 R. C. L. 65, 66, 74, 102, 103, 104; 66 S. C. 227; 100 S. C. 480.

October 14, 1916.

The Circuit Judges having been called to the assistance of the Supreme Court, the judgment of the Court *en banc* was delivered by MR. CHIEF JUSTICE GARY.

This is an application to the Court, in the exercise of its original jurisdiction, for an injunction restraining the respondents from proceeding to take steps preparatory to the holding of an election upon the question of establishing the proposed new county of Catawba.

In order to expedite the final decision in this case, this Court referred all questions to the Judge of the Sixth Circuit, who reached the conclusion that the petitioners were entitled to relief, and that the temporary order of injunction should be made perpetual.

The act giving rise to this controversy provides:

"That hereafter the General Assembly of this State shall not establish any new county, the greatest length of which shall be more than four times as long as the least central width thereof, or which will leave the county or counties from which the territory is taken of a length more than four times as long as the least central width thereof: *Provided, further,* The Governor shall not order an election in such an area described." * * * Act February, 1912 (27 St. at Large, p. 841).

It is not denied that the shape of the proposed new county does not conform to the requirements of the statute.

It is further conceded by the respondents that the injunction should be made perpetual, if the Court should reach the conclusion that the legislature had the power to pass said act; but it is contended that the act is unconstitutional, in that it contravenes the provisions of article VII of the Constitution, especially sections 1 and 2 thereof, which are as follows:

"Section 1. The General Assembly may establish new counties in the following manner: Whenever one-third of the qualified electors within the area of each section of an old county proposed to be cut off to form a new county shall petition the Governor for the creation of a new county, setting forth the boundaries and showing compliance with the requirements of this article, the Governor shall order an

election, within a reasonable time thereafter, by the qualified electors within the proposed area, in which election they shall vote 'Yes' or 'No,' upon the question of creating said new county; and at the same election the question of a name and a county seat * * * shall be submitted to the electors.

"Sec. 2. If two-thirds of the qualified electors voting at such election shall vote 'Yes' upon such questions, then the General Assembly at the next session shall establish such new county: *Provided,* No section of the county proposed to be dismembered shall be thus cut off without consent by a two-thirds vote of those voting in such section; and no county shall be formed without complying with all the conditions imposed in this article. * * *"

The constitutionality of the statute depends upon the question whether the foregoing provision of the Constitution relative to the power of the General Assembly to create new counties shall be construed as discretionary or mandatory.

The provision in section 1 that the General Assembly may establish new counties, and the provision in section 2 that the General Assembly shall establish new counties, are antagonistic, and both of them cannot be construed as having legal force and effect. If the provision authorizing the legislature to exercise a discretionary power in the creation of a new county is construed to express the intention of the Constitution, then it necessarily follows that the mandatory provision does not express such intention, and therefore must be regarded as null and void. And, in that event, it cannot be successfully contended that the act is unconstitutional on the ground that it is obnoxious to the mandatory provision. *Atkinson* v. *Express Co.,* 94 S. C. 444, 78 S. E. 516, 48 L. R. A. (N. S.) 349.

In determining the intention of the Constitution, it is exceedingly important to keep in mind that the legislature does not derive its power to create new counties from article

VI, but from article III, section 1, of the Constitution, which is as follows:

"The legislative power of this State shall be vested in two distinct branches, the one to be styled the 'Senate' and the other the 'House of Representatives,' and both together the 'General Assembly of the State of South Carolina.'"

This provision was taken verbatim from section 1, art. II, Constitution of 1868, which was thus construed in the case of *State* v. *Hayne,* 4 S. C. 420:

"Although the particular office of this section is to fix certain important features of the body through which the function of legislation is to be exercised, yet it describes in an authoritative way the nature of the power thus vested. It is no less than the legislative power of the State. It is not such and so much of the legislative power of the State as were intended to be used by that particular body, but it was the whole legislative power of this State, its whole capacity of making laws and providing the means for their enforcement. It was not intended that the legislature should exercise this power without limitation and restraint, for the Constitution that uses these words of grant imposes many such restrictions and limitations affecting the extent to which it may be effectively exercised."

This language is quoted with approval in *State* v. *Aiken,* 42 S. C. 223, 20 S. E. 221, 26 L. R. A. 345; and the principle is recognized in *Carrison* v. *Kershaw,* 83 S. C. 88, 64 S. E. 1018, and *Lillard* v. *Melton,* 103 S. C. 10, 87 S. E. 421, that the power of the legislature is plenary, except in so far as it may be restricted by constitutional limitations.

Ordinarily the force and effect of a constitutional provision is to prevent legislation inconsistent with such limitation. These respondents, however, contend that the provisions of article VII should be construed as being twofold in their nature, to wit, not only that the legislature is powerless to create a new county, unless there has been a compliance with all the conditions imposed by article VII, but that said

article limits the plenary powers of the legislature so that it cannot enact statutes that would otherwise be consistent with the provisions of that article. There is no doubt as to the proposition that there must be a compliance with all the requirements enumerated in said article; but, under a proper construction, it does not limit the powers of the legislature to impose additional conditions, provided they are not such as, ordinarily, would be construed as inconsistent with those mentioned in the Constitution.

In the case of *State* v. *Parler,* 52 S. C. 207, 29 S. E. 651, the Court uses this language:

"It is suggested that the legislation had in relation to Dorchester county is unconstitutional and void, because it has attempted to enlarge the direct provisions of the Constitution, in sections 1 and 2 of article VII, by allowing a second and other elections to determine the county seat, after the first election on that matter, which was held at the same time the question as to the creation of the new county was submitted to the electors residing in the territory affected thereby. We cannot accept this view. In the first place, the convention speaks in the first section of article VII of the General Assembly establishing new counties. Its only restrictions are set forth in the article, and do not negative the idea that the General Assembly, under its possession of general legislative power, may do other things than those enumerated in the article VII; but it (the legislature) must not controvert, in letter or spirit, the provisions of the Constitution itself."

Recurring to section 1, art. VII, we find this provision:

"At the same election the question of a name and a county seat for such county shall be submitted to the electors."

It will thus be seen that, while the Constitution prescribes a particular day on which to submit the question of a county seat, the Court held that a statute fixing a different time was constitutional, thus necessarily deciding that the word

"shall" was used in a directory or discretionary sense and that it was not mandatory in its meaning.

The word "shall," in section 2, art. VII, which provides that if two-thirds of the qualified electors shall vote "Yes" then the General Assembly at the next session "shall" establish such new county, is in conflict with the word "may" in the first section, which provides that the General Assembly "may" establish new counties, etc., it is also in conflict with the construction necessarily placed on the word "shall" in that part of section 1 which provides that at the same election the question of a county seat shall be submitted to the electors. In such a case the rule is applicable that, when two sections of a Constitution are inconsistent, effect will ordinarily be given to that which is in harmony with other provisions, rather than to that which is inconsistent with more than one provision. *Delk* v. *Zorn,* 48 S. C. 149, 26 S. E. 466.

The circumstances under which a legislative enactment should be declared unconstitutional are well expressed by Chancellor Waites, who, in delivering the opinion of the Court, in the case of *Byrne's Adm'rs* v. *Stewart's Adm'rs,* 3 DeSaus. 476, says:

"If legislative authority is supreme in all cases in which it is not restrained by the Constitution, and as it is the duty of the legislators as well as of the Judges to consult this, and conform their acts to it, so it ought to be presumed that all their acts are conformable to it, unless the contrary is manifest. This confidence in the wisdom and integrity of the legislature is necessary to insure a due obedience to its authority; for, if this is frequently questioned, it must tend to diminish that reverence for the laws which is essential to the public safety and happiness. I am not, therefore, disposed to examine with scrupulous exactness the validity of a law. It would be unwise to do so on another account. The interference of the judicial power with legislative acts, if frequent or on dubious grounds, might occasion so great

a jealousy of this power, and so general a prejudice against it, as to lead to measures which might end in the total overthrow of the independence of the judiciary, and with it this best preservative of the Constitution. The validity of a law ought not, then, to be questioned, unless it is so obviously repugnant to the Constitution that, when pointed out by the Judges, all men of sense and reflection in the community may perceive the repugnancy."

Tested by this rule the act in question must be held to be constitutional.

Judgment affirmed.

MR. JUSTICE WATTS and CIRCUIT JUDGES MEMMINGER, WILSON, RICE, BOWMAN, MAULDIN, SMITH and PEURIFOY concur in the opinion of the Court.

MR. JUSTICE FRASER, *dissenting.* This is known as the "Catawba" county case. There has been a petition presented to the Governor for an election within certain limits there described, looking to the establishment of a new county to be called Catawba county. The Governor has appointed the respondents as commissioners and they have organized for the purpose of carrying out this work.

The petition asks for an injunction against the commissioners on the ground that the proposed new county would be in violation of the statute of 1912, forbidding the formation of ill-shaped counties. The petition does not claim that there is any want of compliance with the provisions of the Constitution, but that the form of the proposed county is forbidden by the statute. The return of the respondents admits that the form of the proposed new county is in conflict with the statute, but claims that the statute is in conflict with the provisions of the Constitution. Thus, it will be seen that the sole question is as to the validity of the statute of 1912.

Learned and exhaustive arguments have been delivered by able counsel on both sides, but the question at issue is on the surface.

The statute is as follows:

"An act to prevent the establishment of ill-shaped counties.

"Section 1. Be it enacted by the General Assembly of the State of South Carolina, that hereafter the General Assembly of this State shall not establish any new county, the greatest length of which shall be more than four times as long as the least central width thereof, or which will leave the county or counties from which the territory is taken of a length more than four times as long as the least central width thereof: *Provided, further,* The Governor shall not order an election in such an area described.

"Sec. 2. That the term 'central width' shall be construed to mean any width of such proposed new county not entirely within eight miles of the ends thereof.

"Sec. 3. That this act shall go into effect immediately upon its approval by the Governor.

"Sec. 4. That all acts or parts of acts inconsistent herewith be, and the same are hereby, repealed." Act February, 1912 (27 St. at Large, p. 841).

The Constitution provides:

"Article VII.   Counties and County Government.

"Section 1. *Formation of New Counties—County Seat and Name.*—The General Assembly may establish new counties in the following manner: Whenever one-third of the qualified electors within the area of each section of an old county proposed to be cut off to form a new county shall petition the Governor for the creation of a new county, setting forth the boundaries and showing compliance with the requirements of this article, the Governor shall order an election, within a reasonable time thereafter, by the qualified electors within the proposed area, in which election they shall

vote 'Yes' or 'No' upon the question of creating said new county; and at the same election the question of a name and a county seat for such county shall be submitted to the electors.

"Sec. 2. *Section of Old County to Be Cut Off.*—If two-thirds of the qualified electors voting at such election shall vote 'Yes' upon such questions, then the General Assembly at the next session shall establish such new county: *Provided,* No section of the county proposed to be dismembered shall be thus cut off without consent by a two-thirds vote of those voting in such section; and no county shall be formed without complying with all the conditions imposed in this article. An election upon the question of forming the same proposed new county shall not be held oftener than once in four years."

It is said that the Constitution says "the General Assembly *may* establish new counties," and, if it may, it may not. That is true. The General Assembly may establish one new county and may not establish another. If the provision had stopped here, then, under the well known undisputed and indisputable power of the legislature, it would have been free to act in accordance with its best judgment in each case as it arose. The Constitution does not stop here. It goes on to say that, when certain conditions are complied with, the Governor "shall" order the election, and the General Assembly, at its next session, "shall" establish such new county.

New counties may or may not be formed, but, when the conditions are found to exist, the election "shall" be held and the new county "shall" be established. It is not denied that the constitutional requirements exist and neither the executive, legislative, nor judicial department of government have the right to say it shall not be established, or to do any act to prevent it without a violation of the constitutional command. Much has been said about the doctrine of implied prohibition. That doctrine has nothing to do with this case. A consideration of that doctrine and the authorities cited tend

only to obscure the question. This is a plain, simple command of the Constitution. If the conditions exist (not disputed), the election "shall" be held, and, if other conditions shall be shown to exist, the new county "shall" be established. If the Constitution has said before an election can be held that certain conditions must be shown to exist, then it might have been pertinent to inquire whether the legislature could add other conditions. That is not the provision for our construction. The provision is, when certain conditions exist, the election "shall" be held; when other conditions exist, the county "shall" be established. To add any condition is to disobey the command. If the Constitution says when eight conditions appear, the new county shall be established, and the legislature says there shall be nine, then the legislature says, notwithstanding the eight appear, the county shall not be established, this is certainly a violation of the Constitution.

When the Governor found in his judgment as Governor, that the constitutional conditions existed (not disputed); he was bound to order the election and this Court is bound not to enjoin his appointees.

The Court *en banc* in *Robinson* v. *McCown,* 104 S. C. 285, 88 S. E. 808, recognizes this when it says:

"By the terms of the Constitution the intention as clearly appears that, on compliance with the specified conditions, the people interested should have the right to an election on the question of creating the new county so that they should not be annoyed by the agitation of that question oftener than once in four years. They complied with the conditions. They were entitled to an election."

See, also, *Fraser* v. *James,* 65 S. C., page 86, 43 S. E. 292:
"The Constitution imposed upon the legislature the duty of creating a new county when the specified conditions existed."

It is said that *State* v. *Parler,* 52 S. C. 207, 29 S. E. 651, is in conflict with this.  A careful consideration of that case will show that there is no conflict.

In that case the provision under consideration reads :

"At the same election the question of a name and a county seat for such county shall be submitted to the electors."

The question was submitted to the electors at the "same election;" but, inasmuch as neither of the county seats voted for received two-thirds majority, the election was declared to have failed to establish a county seat, and the legislature ordered a new election as to county seat and declared that a majority vote should locate the county seat.  The Constitution does not forbid the holding of another election for a county seat in case the first election failed to locate the county seat.  The legislature has the unquestionable power to do anything not forbidden by the Constitution; therefore the legislature had the right to order a second election as to the county seat.  The Constitution does not say that two-thirds vote is necessary to locate the county seat; therefore the legislature had the right to say a majority vote is sufficient.

It is said, however, that the Constitution uses two words, "may" and "shall," and these are in conflict.  If they are, then the word "shall" is used last, and in constitutions, statutes and wills, where there is a conflict, the last provision governs.  This needs no citation to sustain it.

Again, it is said the "spirit of the Constitution" shall govern.  The constitutional convention anticipated the question and said (article I, section 29) :

"The provisions of the Constitution shall be taken, deemed and construed to be mandatory and prohibitory, and not merely directory, except where expressly made directory or permissory by its own terms."

"Shall" is mandatory by its "own terms."

2. There is another reason why this statute cannot be sustained.  If this statute had said "no new county shall be established of a certain shape," there might have been at least

a plausible ground for maintaining that, until it was declared unconstitutional, it was entitled to obedience. It does not say that. It says "hereafter, the General Assembly shall not establish any new county," etc. It makes no difference what follows. On its face it forbids a subsequent legislature to pass an inconsistent act. Make the power of the legislature as great and unrestrained as you please, there is no one who can claim that the legislature of 1912 had the right to abridge the power of any succeeding legislature (except in a contract, which is not before us) to pass any act it deemed best. It is said that, when a part of an act is unconstitutional, the rest, if inseparable, may stand. Strike out the prohibition to succeeding legislatures and nothing is left except the attempt to forbid the Governor to exercise his constitutional powers, and the second is, of course, as futile as the first.

This act (1912) is clearly invalid even if the legislature has the right to add conditions. This, we have seen, they have no right to do.

The judgment appealed from should be reversed, and the order of injunction vacated.

MR. JUSTICE HYDRICK and CIRCUIT JUDGES PRINCE, SHIPP, SEASE and GARY concur in the dissenting opinion of MR. JUSTICE FRASER.

MR. JUSTICE GAGE did not participate in the consideration of this case.