SOUTHERN RAILWAY CO. v. KAY, COUNTY TREASURER.

TAXES—ROADS—WORDS AND PHRASES.—THE BOARD OF COUNTY COMMISSIONERS of Oconee County have the power under the Constitution, art. X., and act of 1896 (22 Stat., 238), to levy and collect on the taxable property of that county one-half of one mill for road purposes in addition to the amount levied for that purpose by the appropriation act of 1899, and that act does not repeal by implication the act of 1896.

*Art. X., secs. 1, 2, 3, 5, 6 and 13, construed, and terms "levy" and "assess" defined.*

Before ALDRICH, J., Oconee, November, 1900. Reversed.

Action by Southern Railway Co. against J. R. Kay, as county treasurer of Oconee County, to recover taxes paid under protest. From judgment for plaintiff, defendant appeals.

*Messrs. Stribling & Herndon,* for appellant. *Mr. E. L. Herndon* cites: *The board of county commissioners is empowered by Constitution to levy and collect taxes for county purposes:* Con., art. x., sec. 13. *As to what is an assessment:* 54 S. C., 564; 4 S. C., 54; 25 Ency., 181. *Act of 1896 is repealed neither expressly nor by implication by act of 1899:* 29 S. C., 485; 37 S. C., 551; 39 S. C., 8; 13 S. C., 394; 14 S. C., 169; Black on Inter. Laws, 112; 23 Ency., 489, *et seq. Taxes are frequently levied by other bodies than the General Assembly:* 1 McC., 360; 32 Miss., 469; 25 Ency., 181; Rev. Stat., 1188, 1066; acts of 1900, p. 289.

*Mr. T. P. Cothran,* contra, cites: *Only question is can commissioners levy in excess of levy authorized by appropriation act:* 23 Stat., 152; 22 Stat., 238.

October 5, 1901. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts are thus succinctly stated by the appellant's attorneys: "This is an action brought by the plaintiff, the Southern Railway Company, against the defendant, J. R. Kay, as county treasurer of Oconee County, to recover from the defendant the sum of $224.72, and costs, the amount of taxes collected of plaintiff under protest by a levy of one-half of one mill on the property of plaintiff for road purposes made by the board of county commissioners for Oconee County. The contention of plaintiff is that the county commissioners had no authority to levy such tax, and such tax is unlawful. The defendant admits the collection of the tax and that the payment was made under protest, and alleges that the levy was authorized by the Constitution of the State and by act of 1896, 22 Stat., 238, sec. 26. From judgment for plaintiff, defendant appeals."

We will first consider whether the levy was authorized under the provisions of the Constitution. The provisions bearing on this question are the following sections of article x.:

"*Section 1.* The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure a just valuation for taxation of all property. * * *

"*Sec. 2.* The General Assembly shall provide for an annual tax sufficient to defray the estimated expenses of the State for each year, and whenever it shall happen that the ordinary expenses of the State for any year shall exceed the income of the State for such year, the General Assembly shall provide for levying a tax for the ensuing year sufficient with other sources of income to pay the deficiency of the preceding year, together with the estimated expenses for the ensuing year.

"*Sec. 3.* No tax shall be levied except in pursuance of a law which shall distinctly state the object of the same to which object the tax shall be applied.

"*Sec. 5.* The corporate authorities of counties, townships, school districts, cities, towns and villages, may be vested

with power to assess and collect taxes for corporate purposes, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. * * *

"*Sec. 6.* * * * The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds for any purpose, except for educational purposes, to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, county officers and for litigation, quarantine and court expenses and for ordinary county purposes, to support paupers and pay past indebtedness.

"*Sec. 13.* The General Assembly shall provide for the assessment of all property for taxation; and State, county, township, school, municipal and all other taxes shall be levied on the same assessment which shall be that made for State taxes; and the taxes for the subdivisions of the State shall be levied and collected by the respective fiscal authorities."

In the case of the *State* v. *R. R. Co.,* 54 S. C., 564, Mr. Justice Jones says: "Under the scheme of our tax laws the names of all taxpayers and a statement of their taxable property, with its value as assessed by proper officers for taxation, the rate of taxation and the specific amount due by each, are entered by the county auditor on the book known as the 'County Duplicate,' and this duplicate when delivered to the county treasurer becomes his warrant for the collection of taxes, subject to certain provisions for additional entries after delivery of the duplicate to the treasurer. Taxes are legally assessed and become a charge against the taxpayer when so entered according to law." The Court, in *People* v. *Weaver,* 10 Otto, 539, shows that taxation has reference to the entire process of assessments, and includes the valuation of the shares as well as the ratio of percentage charged on such valuation. It says: "This *valuation* then is a part of the *assessment* of taxes. It is a necessary part of every assessment of taxes which is governed by a ratio

of percentage. There can be no rate or percentage without
a valuation." Then the Court proceeds to quote the follow-
ing: " 'When taxes have been properly decided upon, an
assessment may become an indispensable proceeding in the
establishment of any individual charge against either person
or property. This is always requisite when the taxes are to
be levied in proportion to an estimate either of value of bene-
fits or the results of business.' 'An assessment, strictly
speaking, is an official estimate of the sums which are to
constitute the basis of an apportionment of a tax between
the individual subjects of taxation within the district.' As
the word is more commonly employed, an assessment con-
sists in the two processes, *listing* the persons, property, &c.,
to be taxed, and of estimating the sums which are to be the
guide in an apportionment of the tax between them * * *
Taxation by valuation cannot be apportioned without it."
Cooley Tax., 258, 259; Burroughs Tax., p. 198, sec. 94.
So, also, Judge Bouvier defines assessment to be "determin-
ing the value of a man's property or occupation for the
purpose of levying a tax. *Determining the share of a tax
to be paid by each individual.* Levying a tax. 1 Bond,
154." This language is quoted with approval in *State* v.
*R. R. Co., supra.* In defining the meaning of the word levy,
under the head of taxation, the Enc. of Law, vol. 25, p. 181,
says: "The term 'levy' is here used to indicate the legisla-
tive act, whether State or local, which determines that a tax
shall be laid, and is to be distinguished from the levy on
property incident to the enforcement of the collection of the
tax, in which sense the term is also used;" and in defining
the term assessment on page 199, uses this language: "An
assessment may be defined to be the act of assessing, deter-
mining or adjusting the amount of taxation to be paid by an
individual or a community—an official valuation of prop-
erty, profits or income for purposes of taxation. Where
taxes are to be levied in proportion to an estimate either of
values, benefits or the results of business, an assessment is
indispensable." Webster's International Dictionary gives

as one of the definitions of levy: "To raise or collect by assessment, to exact by authority as to levy taxes, toll, tribute, or contributions." In *Morton, Bliss & Co.* v. *Comptroller General,* 4 S. C., 430, the Court says: "The duty enjoined on the legislature is to 'levy a tax.' A tax is the means by which a burden primarily bourne by the State is transferred to the citizen * * * Three things are essential to a tax, as that term is understood by our Constitution, First, the ascertainment of a sum certain or that can be rendered certain to be imposed on the collective body of taxpayers; second, a legal imposition of that sum as an obligation on the collective body of taxpayers; third, an apportionment of such sum among individual taxpayers so as to ascertain the part or share that each should bear * * * The first two acts above described, namely, the ascertainment of a sum to be imposed on the collective body of taxpayers, and its imposition by a legislative declaration to that effect, are essentially legislative acts or acts proper directly to the law-making function of the government * * * The third act, namely, the apportionment of the whole sum imposed by way of tax on the collective body of taxpayers upon the separate individuals composing that body, is usually an administrative act performed under specific statutory directions, ascertaining the mode and time of its performance * * * When the aggregate value of property is ascertained at the time the tax levy is ordered, the legislature frequently makes the division, and directs the levy to be made according to the resulting rate, which is thus established by law, instead of merely fixing the amount to be levied, and leaving the rate to be ascertained by computation after the aggregate valuation of property, subject to taxation, is ascertained and known. Both modes are resorted to, and both are equally appropriate to adoption by the legislative body. As there are two distinct stages in this process, the result of one of which is to fix an indebtedness on the collective body of taxpayers and the other on the individual taxpayer, so the words 'levy' is indifferently employed, as com-

monly used, to express either one of these processes separately, or both collectively. A tax is said to be levied, when the amount or rate to be imposed is fixed by law; for what is wanting to complete such levy is supplied by the standing tax laws, and consists in a course of administrative action. When the levying of a tax is spoken of as a legislative act, it is commonly understood to describe such action on the part of the legislature as would, with standing tax laws, complete the legislative authority requisite to enable the administrative department to distribute and collect the tax * * * In other words, the tax directed to be levied must be so far imposed, in order to comply with the letter and spirit of the Constitution, that no further legislation will be necessary to enable its collection."

The provisions of the Constitution upon which the appellant mainly relies is that portion of sec. 13 to the effect that "the taxes for the subdivisions of the State shall be levied and collected by the respective fiscal authorities thereof." The meaning of the word "levied," therein used, is to be determined in connection with a consideration of the other provisions of the Constitution. The word "levy," as hereinbefore shown, is frequently used in more than one sense, and its meaning in a particular instance is to be determined by resort to the context. It is sometimes used for the purpose of conferring all the powers incident to the creation and collection of a tax; as when "corporate authorities are vested with power to assess and collect taxes for corporate purposes," while, again, it is only intended to confer administrative powers in the collection of the tax, without reference to its creation, and this is the sense in which it is used in the 13th section. By this construction alone can force and effect be given to all the foregoing provisions of the Constitution. It will be observed that the 13th section makes no reference to the *creation* of the tax, which only could be done by the General Assembly, or by the county after the General Assembly had "vested it with power to assess and collect taxes for corporate purposes." The in-

3—62

tention was that the taxes for the subdivisions of the State should be *collected* by the respective fiscal authorities thereof, whether imposed by the General Assembly or the corporate authorities of counties, &c., when vested by the General Assembly with power to assess and collect taxes for corporate purposes.

From the foregoing provisions of the Constitution we deduce the following conclusions:

1. That the word "assessment," in the provision that "State, county, township, school, municipal and all other taxes shall be levied on the same assessment, which shall be that made for State taxes," means "valuation."

2. That the word "law," in the requirement (sec. 3) that "no tax shall be levied except in pursuance of a law which shall distinctly state the object of the same, to which object the tax shall be applied," means an act of the General Assembly, except when there is a provision of the Constitution that is self-executing, as in the case of the three mills tax for school purposes. This construction is supported by sec. 16, of art. III., which is as follows: "The style of all laws shall be: ` 'Be it enacted by the General Assembly of the State of South Carolina.' " There may be a compliance with the requirements of sec. 3, either by an act of the General Assembly levying the tax, or by an act of the General Assembly vesting corporate authorities of counties, &c., with power to assess and collect taxes for corporate purposes, when the act distinctly states the object of the same, and the corporate authorities aforesaid levy the tax in accordance with the provisions of such act.

3. That the power to collect the taxes for the subdivisions of the State is conferred by the *Constitution* upon the fiscal authorities of such subdivisions, whether the tax was created by any act of the General Assembly, or by the said corporate authorities under an act of the General Assembly.

4. That the tax was not authorized by the Constitution without legislative action.

We will next consider whether the levy was authorized by

act of 1896, 22 Stat., 238, sec. 26. His Honor, the Circuit Judge, ruled that section 26 of the act of 1896 authorized the board of county commissioners to levy annually a sum not exceeding one mill in the respective counties, and that the General Assembly, by the act of 1899, itself levied a tax of one mill for road purposes. That the act of 1899 necessarily had the effect of repealing and limiting the powers of the board of county commissioners. Sec. 26 of the act of 1896 is as follows: "Sec. 26. That the county board of commissioners of said counties be, and they are hereby, authorized to levy annually a sum not exceeding one mill on all the taxable property of the respective counties, which shall constitute a part of the county road fund, to be expended by the said board in the same manner as is provided by law for the use and expenditure of the commutation tax in lieu of road duty; and such tax shall be collected at the same time and in the same manner as is provided by law for the collection of taxes levied for ordinary county purposes: *Provided,* That the provisions of this section shall not apply to Orangeburg County."

The words of the act entitled "An act to raise supplies and make appropriations for the fiscal year, commencing January 1st, 1899," by which the levy of one-half of one mill for road purposes for Oconee County are: "For roads, one-half of one mill (1-2)." The legislature, by sec. 26 of the act of 1896, vested the board of county commissioners of Oconee County with power to levy annually a sum not exceeding one mill, which should constitute a part of the county road fund, but this did not prevent the General Assembly from levying an additional tax for the same purpose. The two acts are consistent, and there was error, therefore, in ruling that the act of 1899 repealed, by implication, sec. 26 of the act of 1896.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed.