18221

The STATE of South Carolina *ex rel.* Daniel R. McLEOD, Attorney General, and G. Thomas Harmon, III, Walter F. Petty, Emery A. Gunnin, Harlan E. McClure and John M. Mitchell, Jr., constituting and acting as the South Carolina State Board of Architectural Examiners, Appellants, v. L. K. MONTGOMERY, Respondent.

(136 S. E. (2d) 778)

*Messrs. Daniel R. McLeod, Attorney General, Grady L. Patterson, Jr., Assistant Attorney General,* and *M. Boyd Neeley,* of Columbia, *for Appellants,*

*Messrs. Wallace D. Connor* and *L. L. Lesesne,* of Kingstree, *for Respondent.*

June 2, 1964.

BUSSEY, Justice.

This is an action wherein appellants seek to enjoin the respondent, who is not a registered architect, from holding himself out as an architect and from engaging in the practice of the profession of architecture in the State of South Carolina. The action is based upon the provisions of Title 56, Chapter 2, of the 1952 Code of Laws, which chapter creates the State Board of Architectural Examiners and deals generally with the qualifications, licensing and regulation of architects. Although since amended, what is now Title 56, Chapter 2 was first enacted in 1917; Acts of 1917

(30) 198. This chapter makes it unlawful "for any person to practice architecture in this State or to use the title 'architect' or to use or display any title, sign, word, card, advertisement, or other device or method to indicate that such person practices or offers to practice architecture or is an architect, without being registered as such, as provided by law." *Inter alia,* the chapter provides for relief by way of injunction against any person violating the provisions of said chapter.

The complaint alleges that respondent was engaging in and for some time had engaged in and performed the services and duties of an architect on several building projects in the state, and the evidence shows that he had drawn plans and specifications for and either supervised, or assisted in the supervision of, the construction of various buildings in the vicinity of Kingstree, South Carolina, including an addition to the Santee Electric Cooperative building in Kingstree, cost $20,000.00; an addition to the Kelly Memorial Hospital in Kingstree, cost $31,695.15; Kelly Memorial Hospital Nurses' Home in Kingstree, cost $16,989.00; Kingstree Methodist Church, cost, including utilities, about $180,000.00; the radio station in Kingstree, cost $6,000.00; Cedar Grove Baptist Church, cost $50,-000.00. For his services the respondent was paid either a percentage of the cost of the construction or a flat agreed fee.

In his work respondent classified himself as an "architectural designer" and it was undisputed that whenever the question arose he explained that he was not a licensed architect. There is no evidence that he ever advertised himself as an architect. On the other hand, there is evidence to the effect that he was known and referred to as an architect by persons who either used the term carelessly, or were unaware of any distinction between the terms "architect" and "architectural designer."

The evidence reflects that there is a recognized distinction between the terms at least among people in architec-

tural circles. The evidence, however, does not reflect a clear or concise definition of the term "architectural designer," nor has any judicial, statutory or dictionary definition of the term come to our attention. We think the evidence reflects, however, that at least within architectural circles, the term "architectural designer" is applied to one who drafts plans with particular attention to the appearance of a building; one who may or may not be a licensed architect and, if not a licensed architect, usually works under the supervision of a licensed architect and does not undertake to perform all of the services customarily performed by an architect.

Chapter 2 of Title 56 does not undertake to define architecture or the practice of architecture, but in the case of *Wilson & Edwards v. City Council of Greenville,* 65 S. C. 426, 43 S. E. 966 (1903), this court dealt with the question of what constitutes the pratice of architecture. There the court said:

"An architect is defined in Webster's International Dictionary as a 'person skilled in the art of building; one who understands architecture, or makes it his occupation to form plans and designs of buildings, and to superintend the artificers employed.' This is practically the same as the definition in 2 Enc. of Law (2d Ed.) 815. In the note to the page last mentioned it is said, 'His duty is to draw plans, make out specifications, and generally superintend the execution of the work'."

The evidence shows, we think, and moreover, the respondent admits, in effect, that he was engaging in the practice of architecture. We quote the following from his testimony on cross examination.

"Q. Isn't it a fact that if you were a registered architect, or had been at that time that it would not have affected the work you had been rendering, with the exception of the seal and signature and changing the designation on the plans?

"A. It certainly would, sir.

"Q. In what respect?

"A. The school jobs, for instance.

"Q. You could get different type jobs?

"A. Yes, sir.

"Q. And you could also get the same types you had been doing?

"A. Yes, sir.

"Q. And in regard to those, the only change would have been in designating by whom the plans were drawn, you would sign it L. K. Montgomery, Registered Architect, and put your seal on it, is that correct?

"A. Yes, sir."

While the exceptions and the questions stated by the appellants are several, the real question before us is the proper construction of Section 56-63 of the Code, which reads as follows:

"56-63. Chapter inapplicable to contractors, etc. Nothing in this chapter shall be construed to apply to contractors, builders, mechanics or private individuals making plans and erecting buildings, so long as they do not hold themselves out to the public as architects."

The circuit judge, in considering the meaning and effect of this section, apparently concluded that the only thing the entire chapter made unlawful was holding oneself out as an architect when not licensed. His order, however, from whence comes this appeal, enjoined the respondent not only from holding himself out to be an architect, but from practicing architecture. We quote the following from the order:

"2. That the defendant is enjoined from practicing architecture or from holding himself out to be an architect unless he is properly licensed by the State Board of Architectural Examiners.

"3. That the defendant may continue carrying on his business as he has in the past, that is, drawing plans and erecting buildings, so long as he does not hold himself out to be an architect."

The respondent contends that Section 56-63, as apparently concluded by the circuit judge in the body of his order, renders the remainder of Chapter 2 only a "title law" making it unlawful only for a person to hold himself out to be an architect if he is not lawfully registered as such. He, moreover, contends that he is only engaged in "making plans and erecting buildings," and that he is specifically exempted from the other provisions of Chapter 2 by virtue of Section 56-63.

■ We do not think, however, that respondent is engaged only in making plans and erecting buildings within the usual and ordinary meaning of those words. Instead, he is engaged in making plans, writing up detailed specifications, and the supervision of the erection of buildings for the owners by contractors, rather than engaged simply in making plans and erecting buildings. Of course, supervision is, in a sense, a part, or at least contributes to the proper construction or erection of a building, but the contractors were the ones who actually erected the buildings. Thus we think that within the usual and ordinary meaning of the statutory language, respondent's activities did not come within the terms of the exemption.

The provisions of Title 56, Chapter 2, until we get to Section 56-63, clearly reflect the intention of the legislature to establish the qualifications required for the practice of architecture, to safeguard the public, to prohibit both the use of the title "architect" and the undertaking of the work of architects by anyone not registered in accordance with the law, and to, in general, regulate the practice of the profession of architecture.

■ The interpretation which the respondent would place upon Section 56-63 would nullify virtually all of the chapter regulating the profession of architecture and leave all persons free to practice that profession so long as they do not call themselves architects. All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably

discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. *Bohlen v. Allen*, 228 S. C. 135, 89 S. E. (2d) 99.

In seeking the intention of the legislature, we must presume that it intended by its action to accomplish something and not to do a futile thing. *State ex rel. Walker v. Sawyer*, 104 S. C. 342, 88 S. E. 894. As above pointed out, we do not think that the activities of the respondent sought to be enjoined come within the plain and ordinary meaning of the exemption language contained in Section 56-63. However, even if it be conceded that his activities come within the plain and ordinary meaning of the language, the construction of that section apparently arrived at by the lower court and contended for by the respondent here is, we think, unsound. As was said in *Stackhouse v. County Board*, 86 S. C. 419, 68 S. E. 561,

"However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning, when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature, or would defeat the plain legislative intention; and if possible will construe the statute so as to escape the absurdity and carry the intention into effect." To the same effect is *State ex rel. Walker v. Sawyer, supra.*

Chapter 2, other than the provisions of Section 56-63, showing a clear purpose and intent on the part of the legislature to regulate not only the use of the title "architect" but also particularly the practice of architecture, it must be supposed to have intended to be consistent with itself, and when it has clearly expressed its intention in one or more parts of an act, it will be presumed that it had the same intention in another part unless a different intention clearly appears.

We are not here called upon to decide precisely what activities the legislature did intend to exempt by the provisions of Section 56-63, but do conclude

that the legislature did not intend to exclude from the operation of the chapter the activities of the respondent as disclosed by the record here.

In our view, the respondent was clearly practicing the profession of architecture without being licensed as such, in violation of law, and the lower court correctly enjoined him from practicing architecture or from holding himself out to be an architect unless properly licensed. The holding of the lower court, however, "that the defendant may continue carrying on his business as he has in the past, that is, drawing plans and erecting buildings, so long as he does not hold himself out to be an architect," was, we think, for the reasons hereinabove set forth, erroneous, and to that extent, the decision of the lower court is reversed. To allow respondent to continue carrying on his business as in the past was, in effect, an authorization to violate the injunction already granted in the preceding paragraph of the order.

Affirmed in part, reversed in part.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.