19512

W. K. GUNTER, Jr., et al., Respondents, v. Bill BLANTON, Auditor, Cherokee County, South Carolina, et al., Appellants

(192 S. E. (2d) 473)

*Messrs. Harry L. Cline,* of Gaffney, *Dennis & Dennis,* of Moncks Corner, and *Cooper, Gary, Nexsen & Pruet,* of Columbia, *for Appellants,*

*Messrs. A. Ray Godshall,* of Gaffney, and *Sinkler Gibbs Simons & Guerard,* of Charleston, *for Respondents,*

October 31, 1972.

LEWIS, Justice:

This appeal is from an order of the lower court declaring a 1969 amendment to Act No. 685 of the 1967 Acts of the General Assembly unconstitutional as violative of the sepa-

ration of powers provision (Article I, Section 8) of the South Carolina Constitution.

The General Assembly adopted, in 1967, Act No. 685 (55 Stat. 1383) by which the Board of Trustees of Cherokee County School District No. 1 was established as the governing body of the Cherokee County public school system. The Board was granted broad authority over the operation of the county public school system, including sole authority in all budgetary matters of the school district and the power to "determine and fix the amount of the levy needed to operate the schools in the district for any one year." The auditor of the county was then required to levy and the treasurer to collect the tax as determined by the Board.

Act No. 685 originally contained no specific limitation upon the power of the Board of Trustees to fix the amount of the annual levy for school taxes to operate the schools in Cherokee County. However, in 1969 the General Assembly adopted Act No. 542 (56 Stat. 922) which provided that, if approved by countywide referendum, Section 31 of Act No. 685, relating to the power to levy taxes, would be amended so as to require the approval of a majority of the resident members of the Cherokee County Legislative Delegation before any tax levy for the school district could be increased. The referendum required by Act No. 542 resulted in the approval of the amendment to Section 31.

Section 31, as originally adopted, was as follows:

"The Board of Trustees of School District No. 1 may, by resolution duly adopted, determine and fix the amount of the levy needed to operate the schools in the district for any one year and shall on or before the first day of July of each year notify the auditor of the county of the amount of the levy and file with him a certified copy of the resolution. It shall thereafter become the duty of the auditor of the county to levy and the treasurer to collect, the tax as determined and directed by the Board upon all the taxable property in the school district as other taxes are collected."

440

The statute of 1969 (No. 542) amended the foregoing provisions of Section 31 by adding at the end thereof the following:

"Provided, however, no such tax levy shall be increased in any year without the approval of a majority of the resident members of the Cherokee County Legislative Delegation."

Thereafter disagreement arose as to the administraton of the power to levy a tax under the statutes, as amended, and this action was brought by the Board of Trustees against the auditor and treasurer of the county, challenging the constitutionality of the amendatory statute, and for certain alternative relief. We need consider only the basic constitutional issue.

The Board takes the position that the amendatory Act of 1969, by making any increase in the tax levy for school purposes subject to approval by the Cherokee County Legislative Delegation, authorized the Legislative Delegation to exercise executive or administrative powers in violation of Article I, Section 8, of the Constitution of this State, which provides:

"In the government of this State, the legislative executive, and judicial powers of the government shall be forever separate and distinct from each other and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other."

In attempting to sustain the 1969 amendment, the defendants (the auditor and treasurer) contend that the authority conferrend upon the County Legislative Delegation to approve any increase in the tax levy constitutes a proper exercise of the legislative power to tax.

The lower court properly sustained the view of the Board of Trustees and held that the amendatory Act was unconstitutional as violative of Article I, Section 8.

The power of the Legislature to provide for the imposition of taxes is unquestioned. Article 10, Section 3, South Carolina Constitution. Under Article 10, Section 5, of the Constitution, this power to tax may be delegated, as it was in this case. No contention is here made that the Legislature cannot impose limitations on the power delegated, when such limitations are imposed in the exercise of its legislative power. Thus, as stated in the order of the lower court, the Legislature may delegate the power to tax, but also impose by law a maximum millage ceiling. This, however, is not the effect of the provision here in question.

Under Act No. 685, the Board of Trustees was granted the general power to levy taxes for school purpose in the district. After conferring this power on the Board, the Legislature passed Act No. 542 which attempted to amend the previous Act by granting to the Cherokee County Legislative Delegation the authority to approve or disapprove any tax increase adopted by the Board. This in effect, constituted the County Legislative Delegation a committee of the Legislature to determine not only when a tax increase was proper but also to take such action with regard to the increase as that committee might deem proper.

That the determination of the amount of the tax levy in the school district may be a legislative function delegable to the corporate authorities of the School District under Article X, Section 5 of the Constitution is beside the point. The Act does not and can not authorize the members of the delegation to participate in this determination as legislators, for they may exercise legislative power only as members of the General Assembly.

To authorize them to participate as corporate authorities of the school district, as the Act attempts to do, clearly assigns to them a dual role in violation of the separation of powers clause of the Constitution.

442

Judgment affirmed.

Moss, C. J., and BRAILSFORD and LITTLEJOHN, JJ., concur.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting):

Being unconvinced of the unconstitutionality of the statutory provision here under attack, I am compelled to dissent. It is of course elementary that no act of the General Assembly should be declared unconstitutional unless it is clearly violative of the Constitution. The provision here involved simply designates and constitutes the local legislative delegation as one of the "corporate authorities" within the purview of Article X, Sec. 5 of the Constitution, and gives it limited voice in the matter of imposition of school taxes pursuant thereto. "Corporate authorities" within the purview of the Constitution are those persons, boards or commissions, whatever may be the form, who are "empowered by the legislative will to act in the premises." *Lillard v. Melton,* 103 S. C. 10, 87 S. E. 421, 427; *Stackhouse v. Floyd,* 248 S. C. 183, 149 S. E. (2d) 437.

It seems settled that the imposition of a tax is strictly a legislative function. *Southern Ry. Co. v. Kay,* 62 S. C. 28, 39 S. E. 785; *Ellerbe v. David,* 193 S. C. 332, 8 S. E. (2d) 518. Under the act, the local delegation, as one of the "corporate authorities", is only given the power of limited participation in the imposition of a tax, its power being limited to the approval or disapproval of any tax increase proposed by the Board. The imposition of the tax by the Board is clearly a legislative act and the veto or approval of a legislative act, even by the chief executive, the Governor is the exercise of a legislative power or function, rather than an executive power. *Doran v. Robertson,* 203 S. C. 434, 27 S. E. (2d) 714; *Gottstein v. Lister,* 88 Wash. 462, 153 P. 595, 598.

It is, of course, true that the local legislative delegation would no doubt want to take a look at the proposed bud-

get of the Board in deciding whether to approve or veto any proposed tax increase. This it may appropriately do, as one of the "corporate authorities", in the exercise of a purely legislative function. By comparison, the entire General Assembly considers the budget proposals of all state departments in connection with performing the legislative functions of levying taxes and appropriating for their respective needs. In considering such budget proposals, the members of the General Assembly are simply performing a function that is both incidental and essential to the proper performance of strictly legislative duties.

The lower court's holding of unconstitutionality was predicated solely, and erroneously I think, on the view that the function to be performed by the local legislative delegation was executive in nature, rather than legislative, and that this case was, accordingly, controlled by decisions such as *Gould v. Barton,* 256 S. C. 175, 181 S. E. (2d) 662, and *Bramlette v. Stringer,* 186 S. C. 134, 195 S. E. 257. The respondents here seek to sustain the judgment on no other theory. Such does not, however, appear to me to be the basis of the majority opinion. Indeed, the basis thereof is not at all clear to me. The opinion seems to concede, contrary to the decision below, that the function performed by the legislative delegation pursuant to the particular act is legislative in nature, rather than executive or administrative.

It is true that, in the absence of constitutionally delegated power, members of a local legislative delegation may exercise legislative power only as members of the General Assembly and not as simply a local legislative delegation. Depending upon one's political philosophy, it may or may not be wise for the General Assembly to designate a local delegation as one of the "corporate authorities" within the purview of Article X, Section 5 of the Constitution, thereby constitutionally clothing it with limited local legislative power. But we are not concerned with the wisdom of such legislation. Our concern is solely whether such course of action of the General Assembly is clearly prohibited by the Constitution.

Just how casting a local legislative delegation in a dual role or capacity, both of which appear to be conceded to be legislative in nature, violates the separation of powers clause of the Constitution escapes me. Wherein are the provinces of either the executive or judicial branches of the government thereby encroached upon?

The power vested in the judiciary to declare an act of the General Assembly unconstitutional and void is, indeed, a most delicate one to be exercised with the greatest of caution by the courts lest the judiciary itself encroach upon the legislative domain in violation of the separation of powers clause of the Constitution, which the General Assembly is here charged with violating. It is well settled that doubt as to the constitutionality of a particular act has to be resolved in favor of validity and it is only where an act is clearly unconstitutional, beyond any reasonable doubt, that the judiciary may invalidate it. *McElveen v. Stokes,* 240 S. C. 1, 124 S. E. (2d) 592; *Thomas v. Macklen,* 186 S. C. 290, 195 S. E. 539; *State ex rel. Edwards v. Query,* 207 S. C. 500, 37 S. E. (2d) 241; *State ex rel. Edwards v. Osborne,* 195 S. C. 295, 11 S. E. (2d) 260.

It is timely and appropriate, I think, to quote from the opinion of Chancellor Waties in the leading case of *Byrne's Adm'rs v. Stewart's Adm'rs,* (1812) (S. C.) 3 Desaus. 466:

"It is the peculiar and characteristic excellence of the free governments of America, that the legislative power is not supreme; but that it is limited and controlled by written constitutions, to which the Judges, who are sworn to defend them, are authorized to give a transcendent operation over all laws that may be made in derogation of them. This judicial check affords a security here for civil liberty, which belongs to no other governments in the world; and if the Judges will every where faithfully exercise it, the liberties of the American nation may be rendered perpetual. But while I assert this power in the Court, and insist on the great

value of it to the community, I am not insensible of the high deference which is due to the legislative authority. It is supreme in all cases in which it is not restrained by the constitution; and as it is the duty of the legislators as well as of the Judges to consult this and conform their acts to it, so it ought to be presumed that all their acts are conformable to it, unless the contrary is manifest. This confidence in the wisdom of integrity of the legislature, is necessary to ensure a due obedience to its authority; for if this is frequently questioned, it must tend to diminish that reverence for the laws which is essential to the public safety and happiness. *I am not, therefore, disposed to examine with scrupulous exactness the validity of a law. It would be unwise to do so on another account. The interference of the judicial power with legislative acts, if frequent or on dubious grounds, might occasion so great a jealousy of this power, and so general a prejudice against it, as to lead to measures which might end in the total overthrow of the independence of the judiciary, and with it this best preservative of the constitution. The validity of a law ought not then, to be questioned, unless it is so obviously repugnant to the constitution, that when pointed out by the Judges, all men of sense and reflection in the community may preceive the repugnancy. By such a cautious exercise of this judicial check, no jealousy of it will be excited, the public confidence in it may be promoted, and its salutary effects be justly and fully appreciated.*" (Emphasis added.)

The Byrne case has been cited numerous times by this Court as well as courts of other jurisdictions, and most of the foregoing quotation was quoted with approval and applied in *Massey v. Glenn,* 106 S. C. 53, 90 S. E. 321, an *en banc* decision in 1916.

The foregoing salutary principles should constantly guard us, the judiciary, against encroaching upon the legislative domain in violation of the separation of powers clause of the Constitution. At the very worst, the statute here is only arguably unconstitutional and these established principles,

446

if adhered to, require that the judgment of the lower court be reversed.