24430

W.O. THOMAS, Jr., Treasurer for the County of Charleston, Pauline S. Koger, Auditor for the County of Charleston, Lawrence E. Richter, Jr., Member of the South Carolina Senate, James Bailey, Stephen Gonzales, Harry Hallman, Ronald C. Fulmer, Roger M. Young, Members of the House of Representatives, and the County Council of the County of Charleston, Respondents v. COOPER RIVER PARK and Playground Commission, James Island Public Service District, North Charleston District, St. Andrew's Parish Parks and Playground Commission, St. Andrew's Public Service District, St. John's Fire District, St. Paul's Fire District, Charleston County Park and Recreation Commission, and D.N. Holt, Jr., as Chairman of the Charleston County Delegation, House of Representatives, of whom St. Andrew's Public Service District is Appellant.

(471 S.E. (2d) 170)

Supreme Court

---

[11] We need not address petitioner's remaining argument as it is manifestly without merit. *See* Rule 220(b), SCACR.

*Leo H. Hill* and *D. Garrison Hill,* both of *Hill, Wyatt, Bannister & Brown,* Greenville, *for appellant.*

*A. Arthur Rosenblum,* Charleston, *for respondents.*

Heard Oct. 18, 1995.

Decided May 20, 1996.

MOORE, Justice:

This is a declaratory judgment action. The trial judge found unconstitutional legislation requiring appellant St. Andrew's Public Service District (District) to submit its budget to the county's legislative delegation for approval. He than substituted respondent County Council in place of the legislative delegation to provide budgetary oversight of District. District appeals contending the trial judge should have severed the offending provision thereby permitting District to function without direct budgetary oversight. We agree and reverse.

## FACTS

Respondents commenced this action challenging the constitutionality of 1949 S.C. Act No. 443, § 5, which provides in pertinent part as follows:

> [T]he County Auditor of Charleston County shall annually levy, and the County Treasurer of Charleston County shall collect, a tax of such number of mills on the dollar on all taxable property in the territorial limits of [District] as shall be fixed, determined and directed by a written

> resolution of the St. Andrew's Public Service District Commission duly transmitted to the said County Auditor . . .; *PROVIDED, HOWEVER, that no tax shall be levied by the County Auditor hereunder unless and until the resolution fixing, determining and directing the same shall have been approved in writing by the Senator and a majority of the Members of the House of Representatives for Charleston County and for the purpose of consideration of the same the said commission shall present all such resolutions to the said Senator and Members of the House of Representatives together with the itemized budget of the district upon which the same is based.*

(Emphasis added.) The trial judge held the proviso requiring the delegation's involvement in the budgeting and taxing functions of District violated the separation of powers doctrine.[1] Rather than strike the proviso as unconstitutional, however, he found the approval function of the delegation should be transferred to County Council which has the statutory power under S.C. Code Ann. § 4-9-30(5) (1986) to make appropriations for special tax districts. The trial judge found it unnecessary to sever the proviso from the remainder of the Act once it was read to require approval by County Council rather than the legislative delegation.

## ISSUE

Did the trial judge err in transferring the approval function to County Council rather than striking the approval requirement altogether?

## DISCUSSION

The test for severability is whether the constitutional portion of the statute remains complete in itself, wholly independent of that which is rejected, and is of such a character that it may fairly be presumed the legislature would have passed it independent of that which conflicts with the constitution. *Thayer v. South Carolina Tax Comm'n,* 307 S.C.

---

[1] It is well settled such a provision is unconstitutional under article I, § 8, of our State constitution. *See Aiken County Bd. of Education v. Knotts,* 274 S.C. 144, 262 S.E. (2d) 14 (1980); *Gunter v. Blanton,* 259 S.C. 436, 192 S.E. (2d) 473 (1972). This ruling is not contested on appeal.

6, 413 S.E. (2d) 810 (1992). Under this test, we have examined the entirety of the Act and its provisions creating District and conclude the legislature would have passed the Act independent of the provision requiring budgetary oversight by the legislative delegation. District is governed by an elected Commission which, by definition, is answerable to its electorate and therefore subject to electoral oversight. We find no reason to nullify the entire Act creating District rather than sever the delegation's role of direct budgetary oversight.

Further, the trial judge's attempt to preserve budgetary oversight by vesting this function in County Council under § 4-9-30(5) violates S.C. Code Ann. § 4-9-80 (1986). That section provides in pertinent part that the provisions of Chapter 9, Title 4, enacted pursuant to the Home Rule Amendment[2] in 1975,

> *shall not be construed to devolve any additional powers upon county councils with regard to public service districts . . . which are in existence on the date one of the forms of [county government] becomes effective* and such political subdivisions shall continue to perform their statutory functions prescribed in laws creating such districts. . . .

Act 443, which created District in 1949, gives county government no authority to approve or disapprove District's budget determinations. Under § 4-9-80, Home Rule legislation cannot be construed to give county government more power over a pre-Home Rule district than it is given in the original Act creating such a district. Therefore, although county government may exercise budgetary control over post-Home Rule districts under § 4-9-30(5), that power does not exist in relation to District, a public service district that predates Home Rule legislation.

We find no reason to deviate from our decisions in *Tucker v. South Carolina Dept. of Highways and Public Transportation*, 309 S.C. 395, 424 S.E. (2d) 468 (1992), and *Gould v. Barton*, 256 S.C. 175, 181 S.E. (2d) 662 (1971), wherein we found similar provisions requiring approval by

---

[2] S.C. Const. art. VIII.

the legislative delegation to be severable.[3] Accordingly, we hold the offending provision of § 5 of Act No. 443 severable from the remainder of the Act.

Reversed.

FINNEY, C.J., and WALLER and BURNETT, JJ., concur.

TOAL, J., dissents in separate opinion.

TOAL, Justice:

I respectfully dissent. The majority, by the mechanical application of rules of statutory construction, has created a monster: fiscal autonomy for a special purpose district which has never been granted such power by the South Carolina Constitution, by statute, or by vote of the people. Because this district has never had this autonomy and because such a result contravenes the very intent of the legislature, I must part with the majority.

It is undisputed the Act 443 is unconstitutional to the extent that it violates the separation of powers provision of the South Carolina Constitution by allowing the legislature to carry out executive functions. *See* S.C. Const. art. 1, § 8; *Knight v. Salisbury*, 262 S.C. 565, 206 S.E. (2d) 875 (1974). The question before this Court is how we may strike the unconstitutional portion of the act, while at the same time remaining faithful to the legislative intent of budgetary oversight. The solution is not, as the majority has done, to apply inflexibly the severability tool of statutory construction.

Courts will reject an interpretation leading to a result so plainly absurd that it could not possibly have been intended, or would defeat plain legislative intention; if possible, courts will construe the statute so as to escape absurdity and carry the intention into effect. *See State ex rel. McLeod v. Montgomery*, 244 S.C. 308, 136 S.E. (2d) 778 (1964). The absurd result that should be rejected here is the granting to a special

---

[3] The dissent complains we too strictly apply the rules of statutory construction in this case. Determining legislative intent, however, is a judicial function whereas legislative decision-making is not. If the dissent disagrees with out conclusion to sever the offending provision, the only other *judicial* remedy is to strike as unconstitutional the entire Act creating District. There is no precedent for this Court to cure an Act's unconstitutionality by rewriting the offending provision.

purpose district absolute authority over its budgetary process, when it has never had such fiscal autonomy. St. Andrews Public Service District ("St. Andrews") has not had fiscal autonomy since its creation in 1949. It should not be suddenly given such autonomy by judicial decree.

The absurdity of this result is indicated by the history of the statute and by the constitutional prohibition on special legislation. First, the history of the acts relevant to St. Andrews manifests a clear intent on the part of the legislature to subject St. Andrews to budgetary oversight. This is revealed by the wording of Act 443 itself: "[N]o tax shall be levied by the County Auditor hereunder unless and until the resolution fixing, determining and directing the same shall have been approved in writing by [the Charleston County Legislative Delegation]." 1949 S.C. Acts 1015. Inclusion of a budgetary oversight provision was fully consistent with an act passed by the legislature two years earlier, Act No. 229, 1947 S.C. Acts 319, which required that all Charleston County public service commissions, boards, and commissions, except school boards, have their budgets approved by the Charleston County Legislative Delegation. Act No. 318, 1949 S.C. Acts 594, amended Act No. 229 to include school boards within this requirement. In 1971 and 1972, the legislature passed two other acts relevant to St. Andrews. 1971 S.C. Acts 1333; 1972 S.C. Acts 3131. These acts provided for operating expenses for the district during two fiscal years. Although the 1971 and 1972 acts did not include a provision for approval by the County Legislative Delegation, this was unnecessary as the legislature itself directed the auditor to levy an amount certain. The above plainly evinces the legislature's intent that there be some review of St. Andrew's budgetary process.

Second, the majority's interpretation leads to an absurd result in that the Court is fashioning an entity that not even the legislature can create and, in doing so, is running counter to a constitutional principle. Our state's constitution declares, "No laws for a specific county shall be enacted. . . ." S.C. Const. art. VIII, § 7. Today's decision has the effect of passing legislation for a single county; whereas, the General Assembly could not have eliminated budgetary oversight for just one county. The legislature could not have passed a bill conferring fiscal autonomy upon St. Andrews, where no such autonomy had previ-

ously existed. Thus, this Court is effecting a result that the South Carolina Constitution prevents the legislature from bringing about.

The primary rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Gilstrap v. S.C. Budget & Control Bd.*, 310 S.C. 210, 423 S.E. (2d) 101 (1992). The legislature's intent—budgetary oversight—may be effectuated through recognition of Charleston County Council as the appropriate reviewing authority. The General Assembly established the appropriate vehicle for budgetary oversight through the provisions of S.C. Code Ann. § 4-9-10 *et. seq.*, which provide guidance on the form and powers of county government. S.C. Code Ann. § 4-9-30(5) (Supp. 1995) states that county governments, with the exception of the board of commissioners, have the power "to assess property and levy ad valorem property taxes and uniform service charges, including the power to tax different areas at different rates related to the nature and level of governmental services provided. . . ." If county government has the power to assess and levy such taxes, then *a fortiori*, it has the power to approve tax resolutions. Accordingly, I find the Charleston County Council is the appropriate body to oversee approval of St. Andrew's tax resolutions.

The majority opinion asserts that budgetary oversight under section 4-9-20-(5) would constitute a violation of S.C. Code Ann. § 4-9-80 (1986) because as the latter statute states, the provisions of chapter 9 "shall not be construed to devolve *any additional powers upon county councils* with regard to public service districts, special purpose districts . . . which are in existence on the date one of the forms of [county government] becomes effective in a particular county. . . ." (Emphasis added.) Finding that county council has the power of budgetary oversight does not devolve "any additional powers upon county council[]"; rather it would be a recognition that county council possessed the power prior to the passage of Home Rule legislation. 1962 S.C. Code of Laws § 14-1169 delineated the powers of Charleston County Council. Among these powers was the ability to "make appropriations and to levy taxes therefor for corporate and educational purposes." 1962 S.C.Code of Laws § 14-1169(5). These powers are analogous to those set forth in section 4-9-30(5). Accordingly, the

Charleston County Council had the power to levy taxes, and ergo, the power to approve tax resolutions, prior to the enactment of Home Rule legislation. Hence, by carrying out budgetary oversight, it is not assuming "any additional powers," but simply exercising those powers that it previously possessed.

*Tucker v. South Carolina Dep't of Highways & Pub. Transp.*, 309 S.C. 395, 424 S.E. (2d) 468 (1992) and *Gould v. Barton*, 256 S.C. 175, 181 S.E. (2d) 662 (1971), cited by the majority, are distinguishable. Neither dealt, as is the case here, with the creation of a fiscally autonomous special purpose district. *Tucker* dealt with the constitutionality of a statute requiring local legislative approval for the expenditure of state budgetary construction funds. *Gould*, a pre-Home Rule case, was concerned with the constitutionality of a statute that mandated local legislative oversight of the annual budget of a special parks commission. The results in these cases in no way compare to the drastically momentous effect of the present decision.

For all the foregoing reasons, I would affirm the circuit court's order.