343 S.C. 509 (2001)
541 S.E.2d 533
CHARLESTON COUNTY PARENTS FOR PUBLIC SCHOOLS, INC., the City of Charleston, Robert B. Kizer, William M. and Lynn Rogers, and Mary Priest, Plaintiffs,
v.
Peggy MOSELEY, in Her Official Capacity as Auditor for Charleston County School District, Defendant.
No. 25231.
Supreme Court of South Carolina.
Heard November 1, 2000.
Decided January 16, 2001.
*511 William E. Craver, III, Craver, Hagood & Kerr, Charleston, for plaintiff Charleston County Parents for Public Schools.
William B. Regan, Carl W. Stent, Charleston, for plaintiffs City of Charleston, Robert B. Kizer William M., and Lynn Rogers, and Mary Priest.
Robert N. Rosen, Alice F. Paylor and Donald B. Clark, Rosen, Goodstein & Hagood, Charleston, for defendant Charleston County School District.
Samuel W. Howell, IV, W. Kurt Taylor, Joseph Dawson, III, Bernard E. Ferrara, Jr., Charleston, for defendant Peggy Moseley.
M. William Youngblood, McNair Law Firm, Charleston, for amicus curiae Charleston Metro Chamber of Commerce.
TOAL, Chief Justice:
The Charleston County Parents for Public Schools ("Petitioners") filed this proceeding against Peggy Moseley ("County Auditor"), the auditor for Charleston County, in the Court's original jurisdiction to determine whether the Charleston County School District's Board of Trustees ("School Board") has authority to impose a tax levy in excess of ninety mills[1] to operate the public school system in Charleston County.

FACTS/PROCEDURAL ANALYSIS
In 1967, the South Carolina General Assembly consolidated the eight school districts in Charleston County into a single district known as the Charleston County School District ("School District"). Financing for the District's operation was *512 effected by vesting in the School Board the power to impose an annual tax levy. Act No. 340, 1967 S.C.Acts 470 (the "Act"). In 1972, three years after the 1969 Act, the General Assembly amended section 10 of the Act. The present Act now provides in section 11:
The Board of Trustees of the Charleston School District shall prepare and submit to the Charleston County Legislative Delegation, as information, on or before the fifteenth day of August of each year beginning in 1968, a proposed budget for the ensuing school year. In order to obtain funds for school purposes the board is authorized to impose an annual tax levy, commencing in 1968, not to exceed Ninety mills, exclusive of any millage imposed for bond debt service. In the event the Board determines that the annual tax levy should exceed Ninety mills, the Board shall hold a public hearing on the question at least two weeks prior to submitting such request to the legislative delegation. Notice of such public hearing shall be advertised in a newspaper of general circulation in the county, and shall state the date, time and place of the hearing as well as a clearly worded statement of the requested annual tax levy. Upon certification by the Board to the county auditor of the tax levy to be imposed the auditor shall levy and the county treasurer shall collect the millage so certified upon all taxable property in the district.
Act No. 1602, § 11, 1972 S.C.Acts 3131, 3134 (emphasis added) ("section 11").
The School Board adopted a budget for its fiscal year 2001 and determined the annual tax levy must exceed ninety mills, exclusive of any millage imposed for bond debt service, in order to fund the budget. On March 20, 2000, after complying with the notice requirements in section 11, the School Board held a public hearing. On May 1, 2000, the School Board certified to the County Auditor that the tax levy for general operations of the School District for its fiscal year 2001 should be set at a level sufficient to generate $86,571,171. The School Board estimated this would require a tax levy for school district operations of approximately ninety-nine and four tenths (99.4) mills. The School Board also submitted the proposed budget for 2001 and a copy of its request to impose a tax levy in excess of ninety mills to the Charleston County *513 Legislative Delegation ("Charleston Delegation"), as required by section 11.
The County Auditor claims she will levy sufficient taxes to fund in full the local share of the School District's budget for the fiscal year 2001. However, she refuses to levy more than ninety mills without a directive by this Court. The County Auditor asks the Court to: (1) dismiss all claims and actions against her in this matter; (2) declare section 11 requires approval by the Charleston Delegation as a condition precedent to the School Board imposing an annual tax levy in excess of 90 mills; and (3) declare the School Board cannot independently raise school tax millage over 90 mills.
The School District and the Petitioners request that the Court direct the County Auditor to levy the amount certified by the School Board in its May 1, 2000 letter, 99.4 mills. The following issues are before this Court:
I. Do the Petitioners have standing?
II. Does section 11 require approval by the Charleston Delegation as a condition precedent to the School Board imposing an annual tax levy in excess of ninety mills, exclusive of any millage imposed for bond debt service?
III. If section 11 requires approval by the Charleston Delegation as a condition precedent to the School Board imposing an annual tax levy in excess of ninety mills, exclusive of any millage imposed for bond debt service, is this condition precedent unconstitutional or otherwise legally invalid?
IV. If section 11 does not require approval by the Charleston Delegation as a condition precedent to the School Board imposing an annual tax levy in excess of ninety mills, does it require the County Auditor to levy the millage set by the School Board, even if such millage exceeds ninety mills, exclusive of any millage imposed for bond debt service, so long as the School District complies with the requirements?
V. If section 11 does not require the County Auditor to levy the millage set by the School Board if such millage exceeds ninety mills, exclusive of any millage imposed for bond debt service, does the Education *514 Improvement Act of 1977, the Education Finance Act of 1977, or other State spending mandates require the County Auditor to levy sufficient millage so the School District is in compliance with the spending requirements of those acts, even if the millage levied exceeds ninety mills, exclusive of any millage imposed for bond debt service?

LAW/ANALYSIS

I. Standing and Joinder
All parties concede Petitioners have standing because the issue is one of public importance that requires resolution for future guidance. Baird v. Charleston County, 333 S.C. 519, 511 S.E.2d 69 (1999); see Thompson v. South Carolina Comm'n on Alcohol & Drug Abuse, 267 S.C. 463, 229 S.E.2d 718 (1976) (holding the plaintiffs had standing because the questions involved were of such wide concern, both to law enforcement personnel and to the public); Berry v. Zahler, 220 S.C. 86, 66 S.E.2d 459 (1951) (holding the question of public interest originally encompassed in an action should be decided for future guidance).
The County Auditor argues the case should be dismissed because Petitioners failed to join the Charleston Delegation as an indispensable party pursuant to Rule 19, SCRCP. We disagree.
The County Auditor asserts the Charleston Delegation is the "most vitally interested party" in this litigation and should be joined in the case. She claims this Court must dismiss the Complaint for failure to join the Charleston Delegation as an indispensable party. First, the remedy under Rule 19, SCRCP is for the Court to make the Charleston Delegation a party, not to dismiss the action. According to Rule 19, SCRCP: "If [an indispensable party] has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff." (emphasis added). Second, the Charleston Delegation is not an indispensable party under Rule 19, SCRCP because complete relief can be accorded to the Petitioners and the School *515 District without the joinder of the Charleston Delegation, and the Charleston Delegation has not claimed an interest in the subject of the action.

II. The Charleston Delegation's Approval of the Millage Rate
Petitioners argue section 11 authorizes the School Board to impose an annual tax levy in excess of ninety mills provided the School Board: (1) advertises notice of the public hearing; (2) states the date, place, and time of the hearing; (3) states the requested annual tax levy; and (4) holds a public hearing at least two weeks before sending the request to the Charleston Delegation. Petitioners argue the language of section 11 does not require the Charleston Delegation's approval before the County Auditor sets the millage rate. We agree.
The primary concern in interpreting a statute is to ascertain and effectuate legislative intent. Whitner v. State, 328 S.C. 1, 492 S.E.2d 777 (1997). All rules of statutory construction are subservient to the rule that legislative intent must prevail if it can reasonably be discovered in the language used, and that language must be construed in light of the intended purpose of the statute. Kiriakides v. United Artists Communications, Inc., 312 S.C. 271, 440 S.E.2d 364 (1994). As in this case, where a statute is complete, plain, and unambiguous, legislative intent must be determined from the language of the statute itself. Whitner, 328 S.C. at 6, 492 S.E.2d at 779.
The heart of this dispute concerns the language used in section 11. The current Act authorizes the School Board to impose an annual tax levy not to exceed ninety mills, exclusive of any millage imposed for bond debt service. Section 11 adds the following two sentences to the Act:
In the event the Board determines that the annual tax levy should exceed Ninety mills, the Board shall hold a public hearing on the question at least two weeks prior to submitting such request to the legislative delegation. Notice of such public hearing shall be advertised in a newspaper of general circulation in the county, and shall state the date, *516 time and place of the hearing as well as a clearly worded statement of the requested annual tax levy.
Nothing in the plain language of section 11 requires approval from the Charleston Delegation before the County Auditor sets the millage rate. Section 11 indicates the contingency occurs only "[i]n the event the Board determines the annual tax levy should exceed Ninety mills...." 1972 S.C.Acts at 3134 (emphasis added). In other words, the School Board determines whether an annual tax levy should exceed ninety mills, not the Charleston Delegation. Furthermore, no provision of section 11 authorizes the Charleston Delegation to vote on, authorize, or reject the School District's budget. Section 11 is silent concerning any intervening action by the Charleston Delegation or any need for the School Board to await the Charleston Delegation's approval.
When the General Assembly has intended to give a legislative delegation budgetary oversight of another entity, it has done so in explicit terms. In Thomas v. Cooper River Park, 322 S.C. 32, 471 S.E.2d 170 (1996), the respondents challenged the constitutionality of legislation requiring the St. Andrew's Public Service District to submit its budget to the county's legislative delegation for approval. The Court held the following provision, which required the delegation's involvement in the budgeting and taxing functions of the St. Andrew's Public Service District, violated the separation of powers doctrine:
[T]he County Auditor of Charleston County shall annually levy, and the County Treasurer of Charleston County shall collect, a tax of such number of mills on the dollar on all taxable property in the territorial limits of [District] as shall be fixed, determined and directed by a written resolution of the St. Andrew's Public Service District Commission duly transmitted to the said County Auditor ...; PROVIDED, HOWEVER, that no tax shall be levied by the County Auditor hereunder unless and until the resolution fixing, determining and directing the same shall have been approved in writing by the Senator and a majority of the Members of the House of Representatives for Charleston County and for the purpose of consideration of the same the said commission shall present all such resolutions to the said Senator and Members of the House of Representatives *517 together with the itemized budget of the district upon which the same is based.

Id. at 33-34, 471 S.E.2d at 171 (emphasis added) (citations omitted). This Court held the provisions requiring approval by the legislative delegation for the St. Andrew's Public Service District was unconstitutional, but severable. Id.
The Act in Thomas manifests a clear intent on the part of the legislature to subject St. Andrews to budgetary oversight. This intent is revealed by the explicit wording of the Act: "[N]o tax shall be levied by the County Auditor hereunder unless and until the resolution fixing, determining and directing the same shall have been approved in writing by [the Charleston County Legislative Delegation]." Id. Section 11 does not contain a comparable clause requiring written approval. All section 11 requires is for the School Board to submit a request to the legislative delegation, it does not require any form of acceptance or rejection by the Charleston Delegation.
Other Acts giving legislative delegations budgetary oversight include specific provisions requiring such approval and explaining how such approval should be obtained. For example, in 1969, the General Assembly amended Act No. 685, to include a limitation upon the power of the Board of Trustees to fix the amount of the annual tax levy for school taxes to operate the schools in Cherokee County. The amendment states, "[N]o such tax levy shall be increased in any year without the approval of a majority of the resident members of the Cherokee County Legislative Delegation." Gunter v. Blanton, 259 S.C. 436, 440, 192 S.E.2d 473, 474 (1972) (emphasis added). The Court held the language was unconstitutional because it assigned to the Cherokee County Legislative Delegation a dual role in violation of the separation of powers clause in the South Carolina Constitution, S.C. Const. art I, § 8.
Similar language was held unconstitutional as a violation of separation of powers in Aiken County Board of Education v. Knotts, 274 S.C. 144, 262 S.E.2d 14 (1980). The right of the Aiken County Board of Education to authorize the assessment of millage to meet its budget was limited by the following provision:

*518 Provided, however, that if a majority of the members of the board conclude that the tax millage for operating school purposes in the district should be increased, they shall, on or before the first day of July, submit a request for such increase to the members of the Aiken County Legislative Delegation and if a majority of the members approve such increase the auditor shall levy and the treasurer shall collect the additional millage to provide for such an increase. If a majority of the members of the legislative delegation refuse to approve the proposed increase, the chairman of the board of education, with the approval of a majority of the members of the board, may call for a referendum in the next general election.
Id. at 147, 262 S.E.2d at 17 (emphasis added). As in Gunter, the Court held the statute was unconstitutional because it violated the separation of powers doctrine. The clear language in Gunter demonstrates that if the General Assembly intends for a legislative delegation to have budgetary oversight, they will explicitly require the approval of the legislative delegation and will explain exactly how such approval is obtained.
The County Auditor also argues the use of the word "request" implies the Charleston Delegation has the power to approve or disapprove the millage rate. Section 11 states: "[T]he Board shall hold a public hearing on the question at least two weeks prior to submitting such request to the legislative delegation." (emphasis added). However, the first sentence of section 11 states: "The Board of Trustees of the Charleston County School District should prepare and submit to the Charleston County Legislative Delegation, as information, on or before the fifteenth day of August of each year beginning in 1968, a proposed budget for the ensuing school year." (emphasis added). When section 11 is read in the context of the entire Act, the language indicates the School Board must submit its proposed budget to the Charleston Delegation simply for informational purposes. The plain language of section 11 indicates the General Assembly did not intend for the Charleston Delegation to have approval power over the millage rate as determined by the School Board. The General Assembly intended for the Charleston Delegation to serve only as advisors in this matter.
*519 Because we find the General Assembly did not intend for the Charleston Delegation to have oversight powers, we do not address the constitutionality of section 11.

III. County Auditor's Duty to Levy the Millage Requested by the Board
According to Petitioners, section 11 requires the County Auditor to levy the millage set by the School Board, even if such millage exceeds ninety mills. Petitioners argue the language in section 11 is direct and mandatory, and the County Auditor cannot refuse to carry out the directive by the School Board. We agree.
The words used in a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction which limits or expands the statute's operation. State v. Hudson, 336 S.C. 237, 519 S.E.2d 577 (1999). Ordinarily, the use of the word "shall" in a statutory provision indicates the provision is mandatory. See TNS Mills Inc. v. South Carolina Dep't of Revenue, 331 S.C. 611, 503 S.E.2d 471 (1998); South Carolina Dep't of Highways & Pub. Transp. v. Dickinson, 288 S.C. 189, 341 S.E.2d 134 (1986). The final sentence in the relevant portion of section 11 contains an absolute directive that requires the County Auditor to levy the amount determined by the School Board: "Upon certification by the Board to the county auditor of the tax levy to be imposed the auditor shall levy and the county treasurer shall collect the millage so certified upon all taxable property in the district." Act No. 1602, 1972 S.C.Acts 3131, 3134 (emphasis added).
Because we find the plain language of section 11 is direct and mandatory and indicates the General Assembly intended for the County Auditor to levy the taxes once the School Board duly complies with the Act, we do not address the School Board's authority to exceed 90 mills in order to comply with the Education Improvement Act of 1984, the Education Finance Act of 1977, or other State spending mandates.

CONCLUSION
We direct the County Auditor to levy the millage sufficient to generate $86,571,171, even if such millage exceeds 90 mills, *520 because: (1) the plain language of section 11 is direct and mandatory and requires the County Auditor to levy the taxes once the School Board has duly complied with the other portions of the Act; and (2) nothing in the plain language of section 11 requires the Charleston Delegation's approval before the millage rate can be increased.
MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.
NOTES
[1] A mill is a unit of property taxation. It is one tenth of one percent.